IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KRISTEN L. CALLAHAN,

    Plaintiff,

v.

EQUIFAX INFORMATION SERVICES LLC, et al.,

    Defendants.

No. C 13-02181 WHA

**ORDER GRANTING IN PART MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

## INTRODUCTION

In this action against credit reporting agencies (CRAs) and a lender, plaintiff moves for leave to file a first amended complaint. In a prior order dismissing certain claims, plaintiff was invited to seek leave to amend the complaint. Plaintiff has done so. Defendant opposes. To the extent stated below, plaintiff's motion is **GRANTED IN PART**.

## STATEMENT

The original complaint under the FCRA identified two distinct groups of defendants: credit reporting agency ("CRA") defendants and furnisher defendants. The former were defendants Equifax Information Services LLC, CSC Credit Services, and TransUnion LLC, while the latter were defendants Roanoke Valley Community Credit Union, SunTrust Mortgage, Inc., and GE Capital Retail Bank. Defendants Roanoke Valley Community Credit Union and GE Capital Retail Bank have been voluntarily dismissed (Dkt. Nos. 25, 60).

That complaint alleged that CRA defendants had been reporting inaccurate information about plaintiff's credit history since June 2011 and that this inaccurate reporting has damaged plaintiff's ability to obtain credit (Compl. ¶¶ 13–15). It alleged that plaintiff disputed the reports but that each CRA defendant failed to investigate plaintiff's credit file and continued to report the allegedly false information (*id.* at ¶¶ 19–24). It alleged, moreover, that CRA defendants reported plaintiff's dispute to furnisher defendants but that furnisher defendants continued to provide CRA defendants with inaccurate information (*id.* at ¶¶ 26–27). Negligent and willful noncompliance with FCRA by both CRA and furnisher defendants were alleged.

Furnisher SunTrust filed a motion to dismiss (Dkt. No. 19). That motion was granted because the complaint's allegations were "too conclusory" (Dkt. No. 42 at 3). The order dismissing the action outlined what would constitute sufficient allegations:

> Plaintiff must explain *why* she believes that defendant SunTrust received notice of the dispute. Any amended complaint must provide specific allegations as to when SunTrust received notice of plaintiff's dispute and why she believes SunTrust failed to properly investigate the information it allegedly furnished to CRA defendants.

(*ibid.*).

Plaintiff now moves for leave to amend. Plaintiff's proposed amended complaint adds detailed allegations against defendant SunTrust (First Amd. Compl. ¶ 26). The proposed pleading alleges that her credit reports indicated that a SunTrust mortgage account was associated with her. Plaintiff disputed the mortgage account and the CRAs notified SunTrust. Although plaintiff's SSN did not match the SSN associated with the mortgage account, SunTrust purportedly verified plaintiff's SSN with the CRAs (only correcting this error a year later when a CRA again contacted SunTrust about the account). Plaintiff's proposed amended complaint establishes the basis of her beliefs as documented communications between SunTrust and CRA defendants (*ibid.*).

A hearing was held on October 3, 2013. To the extent stated below, the motion for leave to amend is **GRANTED IN PART**.

2

## ANALYSIS

Under FRCP 15, leave to amend should be freely given when justice so requires. The underlying purpose of FRCP 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities. *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Leave to amend should generally only be denied under FRCP 15 "upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

The gravamen of plaintiff's proposed complaint is that SunTrust's investigation into plaintiff's reported account information was unreasonable because SunTrust incorrectly verified that plaintiff had an account with it (First Amd. Compl. ¶ 26).

The FCRA Section 1681s-2(b) establishes the "[d]uties of furnishers of information upon notice of dispute." Paragraph (1) governs the duties of a furnisher when a furnisher is notified by a CRA that a customer is disputing "the completeness or accuracy of any information provided" by a furnisher to a CRA. The furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or

3

>    (iii) permanently block the reporting of that item of
>    information.

15 U.S.C. 1681s-2(b)(1).

Plaintiff requested a report after she was denied credit. That report indicated a SunTrust mortgage account was associated with her. She disputed the SunTrust account. When the CRAs notified SunTrust that plaintiff was disputing the SunTrust mortgage account on her credit report, SunTrust incorrectly verified that plaintiff's SSN matched the account. One year later, a CRA again notified SunTrust that plaintiff was disputing the account on her credit report. That time, however, SunTrust reported to the CRA that plaintiff's SSN did *not* match the account (First Amd. Compl. ¶ 26). Plaintiff depends on these allegations to show SunTrust's willful or negligent noncompliance with Section 1681s-2(b) (presumably 1681s-2(b)(1)(A), (c) and that SunTrust's investigation was unreasonable. This order finds that these allegations constitute a plausible showing with regard to negligence, but not willfulness.

SunTrust asserts three arguments in opposition to plaintiff's motion: "the proposed amendment does not allege SunTrust is a furnisher," "plaintiff cannot sufficiently allege that SunTrust did not reasonably investigate the dispute," and "plaintiff cannot claim damages based on SunTrust's alleged conduct" (Dkt. No. 61).

### 1.  SUNTRUST AS A FURNISHER.

Defendant argues that it is not a "furnisher" under the FCRA because plaintiff never had an account with SunTrust (*id*. at 5–6). The FCRA does not define "furnisher," but defendant cites a decision that adequately defines the term: "[t]he term furnishers of information is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness." *Ross v. Washington Mut. Bank*, 566 F. Supp. 2d 468, 475 n.1 (E.D.N.C. 2008) (internal quotation omitted). Defendant emphasizes the phrase "their customers" and argues that defendant would only qualify as a furnisher in actions involving information they had furnished about their own customers (Dkt. No. 61 at 6). Consequently, defendant is not a furnisher in this action, it says, because plaintiff was never a customer (*ibid.*). Not so.

4

Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Ant. v. Burr*, 551 U.S. 47 (2007). To ensure that credit reports are accurate, the FCRA imposes some duties on the persons, entities, and agencies that provide credit information to credit reporting agencies, called "furnishers" in the Act. SunTrust is a furnisher because it furnished credit information to a CRA.

In this case, SunTrust debt was listed on plaintiff's credit report. When plaintiff disputed the SunTrust mortgage account on her credit report, the CRAs contacted SunTrust about the account. Narrowing the definition of furnisher as defendant suggests would leave the CRAs and plaintiff with no way to verify the SunTrust entry because SunTrust would have no duty to investigate. In effect, SunTrust acknowledges this by arguing that its investigation was a "courtesy" to the CRAs (Dkt. No. 61 at 6). This order holds that the term "furnisher" includes someone who furnishes information to a CRA in response to the CRA's inquiry on the credit status of someone, even if the furnisher has no account at all for the subject.

### 2. UNREASONABLE INVESTIGATION.

Defendant concedes that "[t]he issue stems not from what SunTrust reported, but whether SunTrust *reasonably investigated* the notice of dispute provided by the CRAs" (Br. at 7) (emphasis in original). Defendant argues that the FCRA "does not provide for a right of action against a furnisher of false information" under *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) and *Gorman*, cited *infra* at 1153–54 (Dkt. No. 61 at 4, 7). Defendant is correct in arguing that an action against SunTrust solely for providing inaccurate information to a CRA would fall under Section 1681s-2(a), which provides no private right of action. Plaintiff's action, however, depends on the *role* of the inaccurate information in SunTrust's *investigation*. Plaintiff is not merely suing defendant because it furnished inaccurate information. Plaintiff alleges both inaccurate information and an unreasonable investigation (First Amd. Compl. ¶ 26).

SunTrust's argument boils down to saying that, as a reputable firm, it had reasonable procedures in place and the pleading fails to show they were not followed. The inference,

5

1  however, is that if defendant had conducted a reasonable investigation, it would have discovered
2  that plaintiff's SSN did not match the account.

3  Defendant cites several decisions in support of its position: *Arikat v. JPMorgan Chase &
4  Co.*, 430 F. Supp. 2d 1013 (N.D. Cal. 2006) (Judge Ronald Whyte); Chiang *v. Verizon New
5  England, Inc.*, 595 F.3d 26 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147
6  (9th Cir. 2009); and *Westra v. Credit Control Pinellas*, 409 F.3d 825 (7th Cir. 2005). These
7  decisions are unpersuasive.

8  From *Arikat*, defendant argues that Section 1681s-2(b)(1) is merely procedural and
9  simple compliance with the letter of the law renders SunTrust immune. *Arikat*, however, cites
10 *Nelson*, 282 F.3d 1057, for the proposition that "only a nonresponsive furnisher may be privately
11 sued." *Arikat*, 430 F. Supp. 2d at 1024. Inspection of *Nelson* reveals that the "primary purpose"
12 of the FCRA is to "protect consumers against inaccurate and incomplete credit reporting."
13 *Nelson*, 282 F.3d at 1060. *Nelson* notes that Section 1681s-2(b)(1) provides a furnisher the
14 opportunity to "save itself from liability by taking the steps" therein required. *Nelson* does not,
15 however, support the notion that a furnisher is "responsive" under the FCRA when it merely
16 reports *something*, however inaccurate, to a CRA. A furnisher must still fulfill its duties under
17 Section 1681s-2(b)(1), including conducing a reasonable investigation.

18 In *Chiang*, the Seventh Circuit held that in order to survive summary judgment a plaintiff
19 alleging a violation of Section 1681s-2(b)(1) must show some "causal relationship between the
20 [furnisher's] allegedly unreasonable [investigation] and the failure to discover inaccuracies in his
21 account. *Chiang*, 595 F.3d at 37. Even if *Chiang* was controlling authority, plaintiff has met
22 this burden by the plausible showing that SunTrust should have known that the SSN did not
23 match. How hard is it to compare two numbers? They either match or they don't. SunTrust
24 goofed on this or so it is alleged. This failure supports an inference of sloppy work, at least in
25 plaintiff's individual case at the Rule 12 stage.

26 In *Gorman*, our court of appeals held that "the requirement that furnishers investigate
27 consumer disputes is procedural. An investigation is not necessarily unreasonable because it
28 results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out

6

to be inaccurate." *Gorman*, 584 F.3d at 1161. In *Gorman*, however, the furnisher's procedure involved far more than a comparison of two numbers. *Id.* at 1159–61. SunTrust cannot seriously suggest that it fulfilled a procedural requirement when it failed to notice an inconsistency that should have been flagged by even a casual glance at plaintiff's social security number.

In *Westra*, the Seventh Circuit held that the extent of the information provided to the furnisher by the CRA was relevant to whether the furnisher's investigation was reasonable. *Westra*, 409 F.3d at 827. The court held that the furnisher had not been provided enough information by the CRA. There is a notable difference. There the furnisher was not given an SSN; SunTrust was provided plaintiff's SSN.

Defendant's reliance on *Ali v. Capital One*, No. 1:11-cv-02115-LJO-SKO, 2012 WL 260023 at *4 (E.D. Cal. Jan. 27, 2012) is unfounded. SunTrust cites *Ali* to argue that SunTrust followed "reasonable procedures" and therefore plaintiff cannot "articulate any facts showing SunTrust failed to follow reasonable procedures" (Dkt. No. 61 at 7). Furnisher duties under Section 1681s-2(b)(1) only arise when furnisher receives a notice of dispute from a CRA. In *Ali*, plaintiff never alleged that the furnisher received a notice of dispute by the CRA. SunTrust, however, is alleged to have received such a notice (First Amd. Compl. ¶ 26).

Plaintiff contends that defendant should have provided the CRAs with the accurate SSN associated with the mortgage account in question (*ibid.*). Defendant asserts that such a disclosure would "implicate privacy concerns" (Dkt. No. 61 at 14–15). This argument is strange since SunTrust eventually did make such a disclosure, but if SunTrust was concerned about the privacy implications of the requested disclosure, it should have and could have merely notified the CRAs that plaintiff's SSN did not match the mortgage account in question. SunTrust instead inexplicably *verified* that plaintiff's SSN matched the mortgage account.

This order therefore holds that when a CRA gives an SSN to a furnisher and the furnisher erroneously confirms that it matches a debt, that alone constitutes an inference of negligence under the Act. The amended pleading is adequate.

7

### 3. DAMAGES ALLEGATION.

Defendant suggests that it correctly reported to the CRAs that plaintiff's SSN was different than the SSN on file for that account (Dkt. No. 61 at 15–16). As already discussed, this is not true. SunTrust did *eventually* correctly report the SSN associated with the mortgage account in question, but only after an additional inquiry from the CRA *more than a year later*. Meanwhile, plaintiff continued to be denied credit.

Defendant next argues that plaintiff has not adequately alleged actual damages or a causal connection between SunTrust's failings and her harm (Dkt. No. 61 at 16–18). Defendant misreads plaintiff's allegations. There are adequate allegations that plaintiff applied for and was denied credit between the time SunTrust incorrectly verified plaintiff's SSN and when SunTrust corrected that error (between SunTrust's first and second investigation of plaintiff's reported account information), which establishes a plausible causal connection between SunTrust's behavior and plaintiff's harm (First Amd. Compl. ¶ 26).

Defendant argues that the FCRA "offers a safe harbor from liability" and that "[a] financial institution shall not be liable for failure to perform the duties required by this paragraph if . . . the financial institution maintained reasonable policies and procedures to comply with this paragraph (Dkt. No. 61 at 20). Defendant's argument fails. The "paragraph" referenced here is Section 1681s-2(a).

Defendant finally asserts that plaintiff has failed to support with facts or allegations that defendant acted in willful noncompliance of the FCRA (Dkt. No. 61 at 18–20). SunTrust argues that defendant had to have a "reckless disregard" for its duty in order to qualify as willful noncompliance, citing *Burr*, 551 U.S. at 69 (Dkt. No. 61 at 19). Under *Burr*:

> a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Ibid.* Plaintiff's reply argues that "[t]he Court should not dismiss the willfulness claim at the pleading stage" because it is a "factually intensive issue" (Dkt. No. 62 at 9). This order finds that plaintiff's proposed amended complaint does not adequately allege willfulness. SunTrust's

8

conduct was negligently sloppy, but did not demonstrate "reckless disregard." Plaintiff's willful noncompliance claim will not be allowed to proceed against SunTrust.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint is **GRANTED IN PART**. The answer is due by **OCTOBER 18, 2013**. No more Rule 12 practice will be allowed.

**IT IS SO ORDERED.**

Dated: October 3, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE